859 F.2d 149
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ELECTRIC SUPPLIES, INC., Plaintiff-Appellee,
v.
The TRAVELERS INSURANCE COMPANIES, Charter Oak Fire
Insurance Company, Defendants-Appellants.
 No. 87-2222.
 United States Court of Appeals, Fourth Circuit.
 Argued June 6, 1988.
Decided Sept. 9, 1988.
 
 Jon B. McPhail, Hilliard Castilla, McKenzie & McPhail, John B. McLeod, Haynsworth, Perry, Bryant, Marion & Johnstone on brief for appellants.
 Stephen K. Haigler, Michael D. Glenn on brief for appellee.
 Before DONALD RUSSELL, ERVIN, and CHAPMAN, Circuit Judges.
 ERVIN, Circuit Judge:
 
 
 1
 Fire nearly destroyed the building from which Electric Supplies, Inc. (Electric Supplies) operated in October 1985. Electric Supplies sued The Travelers Insurance Companies (The Travelers) and its subsidiary, Charter Oak Fire Insurance Company (Charter Oak) over a number of coverage disputes. After granting summary judgment in favor of The Travelers, the district court ruled in favor of Electric Supplies as to its claims against Charter Oak. Charter Oak appeals. We affirm in part and reverse in part.
 
 
 2
 On October 19, 1985, fire destroyed most of Electric Supplies' business which was located in Anderson, South Carolina. Although repair may have been possible, Electric Supplies decided to rebuild in early 1986. Electric Supplies occupied the new building around July 1 even though it was not fully finished.
 
 
 3
 Charter Oak issued the fire insurance policy covering the building. Coverage limits included $400,000 for the building itself, $600,000 for its contents, $25,000 for debris removal and a twelve-month period of indemnity for lost income and extra expense. The contents coverage limit included at 25% seasonal automatic increase to protect Electric Supplies from inventory fluctuations.
 
 
 4
 Charter Oak paid $331,033.72 for building damage, which included $17,835.40 for debris removal, $600,000 for contents loss and $195,635.56 for lost income and extra expenses. Although the appraisers hired by each party agreed that Electric Supplies' personal property loss totaled $796,132.64, Charter Oak refused to pay anything under the seasonal automatic increase provision because the twelve-month average amount exceeded $600,000. The payment for income and expense was based on a six month period of indemnity for the time needed to repair, not rebuild. Similarly, the building loss and debris removal payments were based on repair rather than rebuilding.
 
 
 5
 Electric Supplies sued for full payment under the policy, including the seasonal automatic increase and a full year of lost income and extra expense. The district court granted summary judgment in favor of The Travelers because it was not the insurer; a subsidiary, Charter Oak, was. At trial, the court ruled in favor of Electric Supplies on all issues. It found the building to be a total loss, actual and constructive, and ordered Charter Oak to pay the full policy limit of $400,000 for the building as well as the full $25,000 for debris removal. It determined that the seasonal automatic increase applied, meaning an additional $150,000 (25% of $600,000) was to be paid for contents loss. Finally, the court extended the period of indemnity to the policy maximum based on the time it took Electric Supplies to finish its new building completely. It awarded $437,465.26 for lost income and extra expense based on the appraisers' valuation for the maximum period of indemnity, twelve months plus an additional thirty days of lost income.
 
 
 6
 Charter Oak appeals all of the district court's coverage and valuation determinations. It also raises appraiser bias as an error and seeks sanctions as well.
 
 
 7
 The district court found "that it was neither practical nor feasible to repair the damaged building." This factual finding that the building was a total loss is subject to the "clearly erroneous" standard of review. Fed.R.Civ.P. 52. Although Charter Oak presented evidence that the building could be repaired, Electric Supplies' evidence showed it to be a total loss, and "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. Bessemer City, 470 U.S. 564, 574 (1985). The court's finding that the building was a total loss is not clearly erroneous, and Electric Supplies was entitled to a full recovery of $400,000.[1]
 
 
 8
 Electric Supplies actually spent some $36,000 for debris removal, which exceeded the policy's $25,000 coverage. Charter Oak's payment of $17,835 was based on the estimated cost of debris removal in a partial loss-repair situation, not a total loss situation. Given the finding of a total loss and the fact that actual debris removal costs exceeded coverage, recovery of the full $25,000 under the policy is appropriate.
 
 
 9
 Charter Oak paid the full $600,000 for personal property loss, and the district court awarded an additional $150,000 under the seasonal automatic increase provision.[2] The provision protects a business against seasonal inventory fluctuations of up to 25% so long as coverage equals or exceeds the twelve-month average value of the covered personal property. In this case, the appraised personal property loss, accepted by the district court, was $796,132.64, which exceeds coverage even including the seasonal increase. Charter Oak argues that the twelve-month average value of personal property also exceeded the $600,000 coverage, however, so the provision should not apply.
 
 
 10
 Personal property coverage protects inventory, other contents such as furniture and office supplies, and tenant improvements and betterments. There was some confusion regarding the average inventory value because of some consignment merchandise owned by General Electric. Initial figures submitted by Electric Supplies showed an average that exceeded $600,000, but the figures were revised to eliminate the value of the consigned merchandise and the average dropped below $600,000. Neal Cason, an expert for Charter Oak, theorized that the revision was a manipulation to bring the figure below $600,000. He based his theory on an examination of the company's general ledger regarding inventory, sales and purchases, the final inventory value of $702,000, and inventory figures included on tax returns. He did not, however, examine the company's perpetual inventory computer record which was more current than the general ledger.
 
 
 11
 The district court found as a fact that Electric Supplies' average value of $583,000 was correct, despite the inconsistencies pointed out by Cason. While we might disagree with that finding in a de novo review, we cannot say that it is clearly erroneous under Rule 52. A reviewing court cannot "reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." Anderson, 470 U.S. at 573. Therefore, we affirm the finding of the average value of the personal property and the resulting recovery of the seasonal automatic increase.
 
 
 12
 The policy's maximum period of indemnity for lost income and extra expense was twelve months, plus an extra thirty days for any continued reduction in income. The appraisers determined that the lost income and extra expenses over the maximum period of indemnity was $437,465.26, but Charter Oak paid only $156,427 for lost income and $38,208 for extra expense based on the time needed to repair the building, a theoretical period of indemnity of about six months. In fact, Electric Supplies rebuilt and moved in during early July, about nine months after the fire. The district court, however, applied the maximum twelve-month period and awarded the full appraisal amount because the building was not completely finished until about a year after the fire.
 
 
 13
 We find as a matter of law that the period of indemnity ended when Electric Supplies occupied its new building and opened for business. While some finishing touches remained undone, the company was back in business. Therefore, the appropriate period of indemnity is nine months, plus the additional month for any continued reduction in income during the settling-in period. The district court simply awarded the full appraisal amount for the entire thirteen months. We remand so that the court can properly determine the exact date Electric Supplies moved into its new building and reduce the award for lost income and extra expense accordingly.
 
 
 14
 Finally, we find Charter Oak's allegations of appraiser bias to be without merit. We also decline its invitation to sanction Electric Supplies under Rule 11 or 37. In sum, we affirm all of the district court's judgment except in regards to the recovery for lost income and extra expense. We remand the case so the district court can reduce the judgment in accordance with this opinion.
 
 
 15
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
 
 
 
 [1]
 Alternatively, the district court also found a constructive total loss based on a local ordinance prohibiting the repair of any building where repair costs would exceed half of its prefire value. Because we affirm the finding of an actual total loss, we do not reach the issue of constructive loss
 
 
 [2]
 Specifically, the policy states:
 Seasonal Automatic Increase--for an additional limit of 25% of the limit of liability specified for Coverage B at the premises to provide for seasonal variations; however, this increase shall not apply: (1) unless such limit of liability shall be equal to 100% of the Named Insured's average monthly values for the 12 months immediately preceding the date of loss or, in the event the Named Insured has been in business for less than 12 months, for such shorter period of time; or (2) to loss resulting from theft by employees or forgery.